**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

| | |
|---|---|
| JAMES HANDLEY<br>1730 Bollinger Road,<br>Westminster, Maryland 21157<br>(CARROLL COUNTY)<br><br>　　　　Plaintiff,<br><br>v.<br><br>BALTIMORE POLICE<br>DEPARTMENT<br>601 E. Fayette Street<br>Baltimore, Maryland 21202<br>(BALTIMORE CITY)<br><br>*Serve on:*<br>　　Lisa Walden, Esquire<br>　　*Office of Legal Affairs*<br>　　100 N. Holiday Street, Suite 101<br>　　Baltimore, Maryland 21202<br><br>　　　　Defendant | Civil No. _____ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT FOR DAMAGES UNDER TITLE VII
AND JURY TRIAL DEMAND**

Plaintiff, James Handley, by and through undersigned counsel, hereby brings this action pursuant to Title VII of the Civil Rights Act of 1654 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.,* as amended by the Civil Rights Act of 1991, to remedy acts of employment discrimination and retaliation against him by his employer, Defendant, Baltimore Police Department ("BPD"), and in support thereof, states the following:

### I.   JURISDICTION AND VENUE

1.   This action arises under the provisions of Title VII and the Fourteenth Amendment to the United States Constitution.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

1

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e and 28 U.S.C. § 1391.

4. The Court has personal jurisdiction over the Baltimore Police Department as a citizen of Maryland or as a person who transacts business within the State of Maryland.

## II. PARTIES

5. Plaintiff is an adult citizen of the United States and a resident of the State of Maryland.

6. The Baltimore Police Department is a municipal police department created by the State of Maryland whose jurisdiction encompasses Baltimore, Maryland.

7. All at times relevant, Plaintiff was employed by the Baltimore Police Department.

8. At all times relevant, the Baltimore Police Department was an "employer" as defined by 42 U.S.C. § 2000e(b) and employed the requisite number of employees to make it subject to Title VII.

9. At all times relevant, the Baltimore Police Department acted by and through the acts of its agents, servants, and or employees, including but not limited to Former Police Commissioners, Darryl De Sousa ("De Sousa") and Garry Tuggle ("Tuggle).

## III. ADMINISTRATIVE PROCEEDINGS

10. On June 28, 2018, Plaintiff timely dual filed a Charge of Discrimination with the Maryland Commission on Civil Rights ("MCCR") and the United States Equal Opportunity Commission ("EEOC"), alleging race and sex discrimination and retaliation. The MCCR retained jurisdiction over the Charge of Discrimination.

11. The MCCR held a Fact-Finding Conference but did not issue a written finding.

12. On February 6, 2020, the EEOC issued Plaintiff a Notice of Right to Sue. (Ex. 1.)

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

2

13.     Plaintiff timely files this Complaint within 90 days of receipt of the Notice.

## IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

14.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 13 with the same effect as if fully set forth herein.

15.     Plaintiff is a Caucasian male. He has been a decorated member of the BPD since 1998. He was promoted to Sergeant in 2003 and Lieutenant in 2007. In 2011, he was promoted to Deputy Major and, in 2012, was made a Major. In January 2016, Plaintiff was assigned to Recruitment and worked closely with the Mayor's office.

16.     In 2017, Mayor Catherine Pugh spoke publicly about the success of the BPD Recruitment Unit under Plaintiff's command, stating that the BPD had hired more sworn officers than it lost to attrition for the first time since 2009. More than 200 sworn officers were hired in 2017, a feat which had not occurred since 2012. Prior to Plaintiff's assignment to the Recruitment Unit, only 91 sworn officers were hired in 2015. Under Plaintiff's leadership, within two (2) years, hiring increased by 127%.

17.     During Plaintiff's command in the Recruitment Unit, De Sousa's son, Daniel De Sousa, applied to become a BPD police officer but was disqualified from the hiring process due to a lack of integrity and an automatic COMAR Disqualifier.

### A.  Plaintiff is promoted to Acting Inspector under Commissioner Davis.

18.     On January 16, 2018, former BPD Police Commissioner Kevin Davis ("Davis") promoted Plaintiff to "Acting Inspector" of the Recruitment and Professional Development Division. In addition to promoting Plaintiff, Davis took the following personnel actions:

- Donald Bauer, III (Caucasian/Male) was promoted to Acting Chief
- Byron Conaway (African American/Male) was promoted to Acting Inspector
- James Rhoden (American Indian /Male) was promoted to Acting Major

3

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

- Dion Hatchett (African American /Male) was promoted to Acting Major
- Daryl Gaines (African American /Male) was promoted to Acting Captain
- Sean Brown (African American /Male) was promoted to Acting Captain
- Lisa Robinson (African American /Female) was promoted to Acting Captain
- Dwayne Swinton (African American /Male) was promoted to Acting Captain

19. During a round-table meeting prior to the promotions, Jason Johnson (Caucasian/Male), the Deputy Commissioner of the Strategic Services Bureau, witnessed De Sousa strongly object to Plaintiff's promotion because he denied his son's application to the BPD. De Sousa was the only Senior Command Staff member present during the meeting to object to Plaintiff's promotion to Acting Inspector.

**B. Davis is fired and upon De Sousa's appointment as the Interim Police Commissioner, he demotes Plaintiff.**

**1. January 19, 2018 – De Sousa's Appointment, Plaintiff's Computer Seized, Cell Phone Disconnected, and Building Access Deactivated.**

20. On Friday, January 19, 2018 at 0750 (7:50 a.m.), while Plaintiff was working in the Recruitment office, his computer became non-operable. Between 0755 (7:55 a.m.) and 0808 hours (8:08 a.m.), Plaintiff reached out repeatedly to the Information Technology Section ("ITS") and Lt. LaTanya Brown (African American/Female) for help regarding his computer access but he was unable to reach anyone. At 0757 (7:57 a.m.), Plaintiff was advised by Lieutenant Chris Nyberg (Caucasian/Male) that Davis had been fired and De Sousa had been named as the Acting Police Commissioner.

21. At 0810 (8:10 a.m.), Lt. Brown entered Plaintiff's office without knocking and advised him that she had been instructed to seize his computer. When Plaintiff asked who ordered the removal, Lt. Brown stated that she had been ordered *not* to tell him who gave the order. Thereafter, Plaintiff asked who else was having their computer taken and Lt. Brown again responded that she had been ordered not to tell him who gave the order.

4

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

22. Plaintiff then began telephoning other members of the BPD, including his direct supervisor, Deputy Commissioner Jason Johnson (Caucasian/Male) ("Johnson"); however, no one had any information about why his computer had been seized. By 0847 hours (8:47 a.m.), Plaintiff's Departmental cellphone suddenly became disabled.

23. At 0925 hours (9:25 a.m.), Plaintiff went to Johnson's office and Major Martin Bartness (Caucasian/Male) and Lieutenant Robbie Quick (Caucasian/Male) were in Major Bartness' office. At that time, he learned that his BPD access badge had been deactivated. He also learned that Major Bartness, Lt. Quick and Deputy Commissioner Johnson's computers had also been seized.

24. At 1149 hours (11:49 a.m.), Plaintiff's cellphone service was restored without any explanation as to why it had been disconnected. At 1215 hours (12:15 p.m.), Lt. Brown returned to Plaintiff's office with his computer and stated "Your computer was taken because it was going to be replaced with a new computer. No new computer could be located so your computer is being returned." Around the same time that Plaintiff's computer was returned, he began hearing rumors that his demotion was imminent.

25. Following the January 19, 2018 firing of Davis and appointment of De Sousa, the media reported on the rampant "confusion" concerning the BPD's seizure of computers, deactivation of access to BPD buildings and cell service disconnections. Mayor Pugh's office denied that the actions signaled a large "purge" of the top commanders put into key leadership roles by Davis. The Mayor's spokesperson reported that the issues with access and cell phones being disconnected were because of a "technical issue."

26. De Sousa later acknowledged to the news media that "he gave the order to cut off at least one commander's access to department files and communication systems in hopes of

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

preventing leaks of sensitive information." Rector, Kevin "Acting Police Commissioner says he cut command office access after Davis firing for fear of leaks," *Baltimore Sun,* (01/26/2018)

27. During the interview, ***De Sousa declined to name the commander*** or commanders he "targeted," ***citing "an ongoing internal investigation."*** Rector, Kevin "Acting Police Commissioner says he cut command office access after Davis firing for fear of leaks," *Baltimore Sun,* (01/26/2018) De Sousa admitted that the decision to seize the computers, cut off cell service and deactivate building access was "solely [his] decision." *Id.* The article further reported that after Davis' firing, two police leaders resigned; namely, Chief Ganesha Martin and Deputy Commissioner Johnson but denied that there had been any other "command changes." *Id.* De Sousa reported that he hoped to announce the "restructure" of the Department, with new appointments to his top command staff, by the middle of the following week. *Id.*

28. After January 19, 2018, Plaintiff's status within the BPD was in limbo as he was given no information as to his rank (Acting Inspector) and his duty assignment. This was because he had not been provided with any information regarding his job responsibilities from any member of the Command Staff.

### 2. February 2, 2018 – De Sousa Demotes Plaintiff from Acting Inspector to Major and Involuntarily Transfers him to the Southwest District.

29. On February 2, 2018, at 1640 hours (4:40 p.m.), Plaintiff received a telephone call to report to De Sousa's office. At 1830 hours (6:30 p.m.), Plaintiff reported to De Sousa's office; also present was Deputy Commissioner Andre Bonaparte (African American/Male).

30. During the five (5) minute meeting, De Sousa advised Plaintiff that there were four (4) Districts that were vital to crime reduction and that he was being returned to the Southwest District as the District Commander. De Sousa also advised that he was "abolishing the Inspector's rank and was returning to the Lieutenant Colonel rank." De Sousa told Plaintiff that he would be

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

6

returning to the rank of "Major." Plaintiff was also advised that Dwayne Swinton (African American/Male) would be the Captain of the Southwest District and that Plaintiff was to mentor him. Immediately prior to De Sousa's decision to involuntarily transfer Plaintiff, he had been ranked as an "Acting Inspector" (one rank higher than Major) and been assigned to the Recruitment and Professional Development Division.

### 3. De Sousa's reason for demoting Plaintiff was a sham and based upon discriminatory and retaliatory reasons.

31.　　De Sousa's expressed reason for demoting Plaintiff was a sham and the real reason for the demotion was discrimination and retaliation. De Sousa did not "do away with Inspector positions;" rather, he changed "titles" but not the organizational structure:

| **Davis Command Structure** | | **De Sousa Command Structure** |
|---|---|---|
| Commissioner | = | Commissioner |
| Deputy Commissioner | = | Deputy Commissioner |
| Chief | returned to | Colonel |
| Inspector | returned to | Lieutenant Colonel |

32.　　After changing the titles, De Sousa impermissibly made command-level employment decisions based upon race regarding which officers to promote and/or demote. For instance:

- Acting Chief Donald Bauer (**Caucasian**/Male) was **demoted** to Lt. Colonel;
- Acting Inspector James Handley (**Caucasian**/Male) was **demoted** to Major;
- Major Martin Bartness (**Caucasian**/Male) was **demoted** to Lieutenant;
- Major Latonya Lewis (**African American**/Female) was **promoted** to Lt. Colonel;
- Acting Major Dion Hatchett (**African American**/Male) was **promoted** to Major;
- Acting Inspector Byron Conaway (**African American**/Male) was **promoted** to Colonel;
- Acting Captain Daryl Gains (**African American**/Male) was **promoted** to Captain;
- Acting Captain Sean Brown (**African American**/Male) was **promoted** to Captain;
- Acting Captain Lisa Robinson (**African American**/Female) was **promoted** to Captain;
- Acting Captain Dwayne Swinton (**African American**/Male) was **promoted** to Captain.

7

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

33. De Sousa promoted African American command members while demoting and/or not honoring the promotions of Caucasian command members, including Plaintiff's promotion to Acting Inspector. Had Plaintiff's promotion been honored, he would have been a Lt. Colonel and receiving a salary corresponding to that position. Instead, he was demoted down to the position and salary of a Major.

**4. February 6, 2018 – De Sousa directs Internal Affairs to Investigate Plaintiff.**

34. On February 6, 2018, Chief Melissa Hyatt (Caucasian/Female) requested that Plaintiff provide her with Daniel De Sousa's entire hiring folder. Chief Hyatt oversaw the recruiting and hiring of sworn BPD members and, at that time, was the highest-ranking member of the Department with recruiting and hiring under her purview.

35. At 1301 hours (1:01 p.m.), Major Ian Dombroski (Caucasian/Male) contacted Plaintiff and asked him to report to the Internal Affairs Division to speak with Chief Rodney Hill. (African American/Male). Chief Hill directed him to bring a certain officer's personnel folder with him (hereinafter "Officer Doe"), so they could discuss Officer Doe's hiring. Information had been provided to Chief Hill by an unidentified source that Officer Doe had been hired even though he had been arrested for a narcotics violation. Plaintiff retrieved Officer Doe's folder and reported to the Internal Affairs Division.

36. Plaintiff met with Chief Hill and Major Dombroski. At the start of the meeting, Chief Hill advised him that De Sousa had contacted him and requested the investigation into the hiring of Officer Doe. Chief Hill said the interview was not disciplinary in nature and was not part of an ongoing investigation against Plaintiff; therefore, Plaintiff spoke freely (and without counsel present) regarding Officer Doe's background investigation. After reviewing Officer Doe's application and responses concerning his criminal background and other verifications, Chief Hill

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

8

and Major Dombroski agreed that there were no issues regarding the hiring of Officer Doe. Chief Hill told Plaintiff that he would relay this information to De Sousa. During the meeting, Plaintiff reported to Chief Hill and Major Dombroski that he had assisted De Sousa's son and other applicants with completing expungement documents and that the difference between Daniel DeSousa's application and Officer Doe was that Officer Doe had been completely honest throughout the entire hiring process, unlike Daniel De Sousa.

37. In Plaintiff's two (2) years as the commanding officer of the BPD Recruitment Unit, he had never been questioned by any member of the Internal Affairs Division regarding a hiring decision. Prior to De Sousa's appointment as Interim Police Commissioner, Davis would speak directly to Plaintiff regarding hiring-related issues and Davis and/or his Chief of Staff would review any personnel or hiring folders if there were any questions or concerns. Therefore, De Sousa's decision to order the Internal Affairs Division to investigate Plaintiff's hiring decisions is unprecedented.

38. At 1922 hours (7:22 p.m.), Plaintiff telephoned Major Dombroski to express his concerns regarding the investigation into Officer Doe. In addition, Plaintiff told him that he believed that De Sousa was actively looking for candidates that were hired for comparison to Daniel DeSousa, who had not been hired. Major Dombroski confirmed Plaintiff's suspicion and stated that Chief Hill had told him that De Sousa had spoken to him about his son's prior disqualification from the BPD hiring process, prior to ordering him to interview Plaintiff about Officer Doe.

     **5. February 8, 2018 – De Sousa moves *then* Major Margaret Barillaro to Plaintiff's former position at Training and Personnel Division.**

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

9

39. Plaintiff's transition to the Southwest District was announced at a February 8, 2018 Comstat Meeting. On that same day, De Sousa replaced Plaintiff with Lieutenant Colonel Margaret Barillaro (Caucasian/Female) to head the Training and Personnel Divisions.

40. Lt. Col. Barillaro was less qualified to take over Plaintiff's position because while she was the Major assigned to the Southern District, she allowed certain Special Police Officers[1] to wear clothing that identified them as "Police," possess BPD radios, attend BPD roll call at the Southern District, park their personal vehicles at BPD stations, utilize police-like flashing vehicle lights, respond to BPD calls, including participating in police chases, arrests and searches, all outside the jurisdiction of their Special Police Officer commissions. Essentially, Lt. Col. Barillaro allowed these Special Police Officers to hold themselves out to the general public as sworn police officers of the BPD. Lt. Col. Barillaro was forced to terminate this relationship between the BPD and these Special Police Officers after she attended a Cherry Hill community meeting wherein members of the public sought clarification as to their actual status with the BPD.

41. Furthermore, Lt. Col. Barillaro was less qualified for Major Handley's position because he had been in the position since January 2016 and was repeatedly praised for his work in recruitment. Under Plaintiff's leadership, within two (2) years, BPD's hiring increased by 127%. In a January 19, 2017 interview with the Baltimore Sun, Plaintiff reported that the BPD's recruiting efforts had rebounded to optimal levels after falling in 2015, with class sizes growing substantially. Wenger, Yvonne, "Pugh wants 100 new patrol officers on Baltimore streets," *Baltimore Sun* (01/19/2017) "He also reported that the diversity of recruits is better than it had

---

[1] A Special Police Officer (SPO) is an individual who is at least 18 years of age who holds a commission granted by the Governor. Generally, the commission authorizes the officer to arrest individuals who trespass or commit offenses on the property described in the commission.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

10

been over the last four (4) years." On March 1, 2017, De Sousa e-mailed Plaintiff and called him an "all star" with regard to his recruitment effort of a certain applicant.

### 6. February 11, 2018 – Plaintiff is ordered to provide a statement concerning the hiring of Officer Doe.

42. On February 11, 2018 at 0948 hours (9:48 a.m.), Plaintiff received a call from Chief Hill, asking whether he had received his text message. Chief Hill explained that Deputy Commissioner Bonaparte (African American/Male) inquired about the hiring of Officer Doe. Chief Hill provided a summary to Bonaparte about the meeting, the rationale for hiring Officer Doe, and his feelings that there was no need for further action, such as documenting the meeting in an official report. However, Bonaparte ordered Chief Hill to provide him with a report regarding the meeting by close of business on February 12, 2018, as well as ordered Chief Hill to obtain a taped statement or an administrative report from Plaintiff regarding the hiring of Officer Doe. Therefore, Chief Hill ordered Plaintiff to provide him with a detailed administrative report regarding the hiring of Officer Doe. Plaintiff stated that he believed that De Sousa and Bonaparte were subjecting him to a hostile work environment and retaliating against him for not hiring Daniel De Sousa.

43. On February 12, 2018, Plaintiff provided a written statement to Chief Hill regarding the hiring of Officer Doe. Chief Hill notified Plaintiff that he was recommending that the charges stemming from the ethics investigation over the hiring of Officer Doe be "Not Sustained." De Sousa refused to sign off on the recommendation. It was not until on or about April 10, 2020 that the charges against Plaintiff were finally closed as "Unfounded."

44. Between February 2018 and April 2020, Plaintiff's reputation and standing within the Department were damaged because the BPD allowed the unfounded charges to linger without timely action and/or dismissal.

11

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

### 7. February 26, 2018 – De Sousa's discriminatory comments during the Commissioner's Call to Accountability Retreat.

45. On February 26, 2018, De Sousa led the Commissioner's Call to Accountability Retreat for command members within the BPD. During the retreat, De Sousa commented that the "BPD suffers from PMS – Pale, Male, Stale" and his admitted goal was to move and remove the "PMS elements" from the Department, which necessarily included Plaintiff. This comment, either alone or within the context of De Sousa's employment decisions, is direct evidence of his motive to disadvantage Caucasian/Male command members in favor of African America/Male and/or African American/Female command members. The BPD organizational charts under Davis and De Sousa demonstrate that, under De Sousa, there was a substantial shift in the demographic make-up of the command positions within the BPD from Caucasian to African American.

### 8. March 12, 2018 – De Sousa involuntarily transfers Plaintiff to the Medical Section.

46. On March 12, 2018, Plaintiff was ordered to meet with De Sousa at 1600 hours (4:00 p.m.) with no explanation as to the nature of the meeting. When he arrived at the meeting, he observed Captain Dwayne Swinton (African American/Male) in the waiting area. Cpt. Swinton had not informed Plaintiff that he had been called to the meeting, which is unusual since Plaintiff was his immediate supervisor. Also present were Lt. Nicholas Edwards (African American/Male) and Captain Lisa Robinson (African American/Female).

47. De Sousa met with Captain Robinson first, even though she was a lower rank than Plaintiff. Thereafter, Plaintiff was called into the meeting and discovered that Deputy Commissioner Bonaparte (African American/Male), Colonel Byron Conaway (African American/Male), Colonel Perry Stanfield (African American/Male) and Lt. Colonel Steve Ward (Caucasian/Male) were present. De Sousa advised that he was removing Plaintiff from his current

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

command at the Southwest District because, in his opinion, he was "not community-oriented." Plaintiff attempted to provide De Sousa with examples of community-related events that he had attended or was scheduled to attend; however, De Sousa was not receptive. Plaintiff asked De Sousa if he had not been successful in reducing crime, which was his alleged reason for sending him back to the Southwest District as a Major. Plaintiff advised that violent and property crime had been significantly reduced since his return and homicides had been reduced by 75%. Furthermore, he reported that non-fatal shootings and robberies were reduced by 200% and 47%, respectively, as compared to the same period in 2017.

48. Despite being presented with all the evidence to remain at the Southwest District, De Sousa told Plaintiff that Captain Swinton (African American/Male), who had only been promoted to Captain on January 16, 2018 and had less than two (2) months' experience as a member of the BPD command staff, would be replacing him at the Southwest District. De Sousa added that, effective immediately, Plaintiff was being transferred to the Medical Section.

49. Plaintiff was clearly out-performing in his task of reducing crime in the Southwest District in the mere one (1) month that he had been put on the job. In addition, he was being replaced by a less qualified African American Male.

50. While De Sousa claimed that his reason for implementing the transfer was because Plaintiff was not "community-oriented," his reason is a pretext for the active discriminatory practices that started with his demotion and involuntary transfer on February 2, 2018. De Sousa's real reason for transferring Plaintiff to the Medical Section was in keeping with his intent to remove the "Pale, Male, Stale" command staff and replace them with African American Males and Females and retaliation for not hiring his son, Daniel De Sousa.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

13

### 9. September 19, 2018 – Lieutenant Colonel Barillaro berates Plaintiff because he had filed a claim for discrimination, thereby retaliating against him for a protected activity.

51. On September 19, 2018, at 1312 hours (1:12 p.m.), Lieutenant Colonel Barillaro, who took over his former position in Recruitment when he was demoted by De Sousa, sent Plaintiff a text message indicating that they needed to meet that day at 3:00 to discuss Interdynamics, the vendor utilized by the BPD for pre-hire psychological screening and other psychological services, stating that it was "very important to reconcile services and records." Plaintiff responded that he was unable to meet at the requested time due to a prior commitment with his son. She requested that he respond to her office to discuss Interdynamics.

52. On September 19, 2018 at 1430 hours (2:30 p.m.), Plaintiff met with Lt. Col. Barillaro in her office for a closed-door meeting. They discussed the current process for paying Interdynamics, Inc. based upon their invoices. During the meeting, they discussed a case involving a critical incident debriefing that Interdynamics completed for an officer. Lt. Col. Barillaro became frustrated because the debriefing had not been completed at the direction of Director Vernon Herron of the Health and Wellness Unit. Plaintiff explained that it was an error on the part of the officer's Sergeant. Without warning, Lt. Col. Barillaro became angry, raised her voice, and accused Plaintiff of being "pissed off" because of his "so-called demotion." She continued to berate Plaintiff, stating that he had a "chip on his shoulder" because of his "so-called demotion" and further remarked that he "was never really promoted." She elaborated that many commanders in acting command positions had not had their promotions made permanent. Lt. Col. Barillaro told Plaintiff "to get over it" and remarked that "it was sad that [he] had become this way." Her attitude was accusatory, angry, disrespectful, and humiliating.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

53.     On September 20, 2018, Plaintiff notified his immediate supervisor, Chief Steven O'Dell, of Lt. Col. Barillaro's actions of the prior day.

54.     Lt. Col. Barillaro's interactions were blatant examples of retaliation for Plaintiff filing a complaint for discrimination, a protected activity under Title VII.

### 10. October 4, 2018 - Plaintiff is removed from the Groupme texting group for command members, an avenue for sharing information regarding certain crime activities and incidents.

55.     On October 4, 2018 at 1725 hours (5:25 p.m.), Lieutenant Colonel Richard Worley and Plaintiff were working in the Command Center as members of the Fleet Week Command. Lt. Colonel Worley asked Plaintiff if he was aware that Colonel Deron Garrity, the Chief of Patrol, had removed him from Groupme. Groupme is a group texting application that is used by members of Command for sharing information about violent crime and other notable incidents. Plaintiff responded that he was not aware that he had been removed and had not received any notification or explanation as to why this may have occurred.

56.     Lt. Col. Worley showed Plaintiff his phone and it was noted that the following members had been removed from Groupme by Colonel Garrity on October 4th, 2018, along with Plaintiff:

- Chief Perry Standfield:  Standfield had resigned earlier on October 4th, 2018 after an incident involving him and Chief of Staff Jim Gillis;

- Lieutenant Gersham Cupid:  Cupid was suspended and had an active Internal Affairs Investigation regarding his conduct; and

- Lieutenant Colonel Steve Ward:  Ward was on medical leave but also may have had pending disciplinary issues.

57.     Plaintiff's removal from Groupme was humiliating and demeaning as it is accessible by Command members as well as Lieutenants and Sergeants. Being removed from Groupme at the same time as Chief Standfield, Lieutenant Colonel Ward and Lieutenant Cupid

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

15

suggested that Plaintiff was not in good standing with the BPD. This action was just one more example of a continuing course of harassment and retaliation by members of the BPD's Command Staff who have ties to De Sousa. Colonel Deron Garrity was promoted to Lieutenant Colonel by De Sousa. He was promoted to Colonel by Interim Police Commissioner Tuggle, who was hand-selected by De Sousa.

## COUNT I
### Racial and Sex (Gender) Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*

58. The forgoing paragraphs are realleged and incorporated by reference herein.

59. Plaintiff was in a protected class based on his race (Caucasian) and sex/gender (Male).

60. On February 2, 2018, Plaintiff was demoted by De Sousa from his position as Acting Inspector to Major and reassigned to a less desirable wok location (Southwest District) and replaced with a less qualified female employee (Barillaro).

61. During this same period, De Sousa discriminatorily demoted and/or failed to honor the promotions of two other Caucasian officers while simultaneously promoting and/or honoring the promotions of seven African American officers.

62. Plaintiff was qualified for the promotion and not selected for the promotion by De Sousa.

63. Less qualified African American and/or Female personnel were promoted over Plaintiff.

64. The BDP's conduct in failing to promote Plaintiff and reassigning him to a less desirable work location constitutes discrimination based on race and sex in violation of Title VII.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

65. The reasons stated for the BPD's actions were not the true reasons, but instead were pretext to hide the BPD's discriminatory animus.

## COUNT II

### Racial Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*

66. The forgoing paragraphs are realleged and incorporated by reference herein.

67. Plaintiff was in a protected class based on his race (Caucasian).

68. On February 6, 2018, De Sousa and/or his leadership team opened an Internal Affairs investigation against Plaintiff for alleged hiring violations that were, in fact, fabricated so that De Sousa could cause disciplinary action to be taken against Plaintiff.

69. De Sousa was motivated by Plaintiff's race and/or the fact that Plaintiff did not offer his son, Daniel De Sousa (African American), a position with the BPD.

70. When the Internal Affairs recommended that the charges against Plaintiff be "Not Sustained," De Sousa refused to accept the recommendation and clear Plaintiff of the fabricated charges.

71. The BDP's conduct in opening an Internal Affairs investigation against Plaintiff and refusing to clear him of the same constitutes discrimination based on race in violation of Title VII.

72. The reasons stated for the BPD's actions were not the true reasons, but instead were pretext to hide the BPD's discriminatory animus.

## COUNT III

### Racial Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.*

73. The forgoing paragraphs are realleged and incorporated by reference herein.

74. Plaintiff was in a protected class based on his race (Caucasian).

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

75. On March 12, 2018, Plaintiff was reassigned to a less desirable work location (Medical Section) and replaced by a significantly less experienced and less qualified African American officer (Capt. Dwayne Swinton).

76. At that time of his replacement, Plaintiff was qualified for the assignment at the Southwest District and was performing his duties exceptionally.

77. The BDP's conduct in reassigning him to a less desirable work location (Medical Section) constitutes discrimination based on race in violation of Title VII.

78. The reasons stated for the BPD's actions were not the true reasons, but instead were pretext to hide the BPD's discriminatory animus.

## COUNT IV

**Retaliation for Engaging in Protected Activities in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et. seq.***

79. The forgoing paragraphs are realleged and incorporated by reference herein.

80. Plaintiff engaged in protected activities when filing and pursing a Charge of Discrimination on June 28, 2018.

81. Plaintiff suffered materially adverse action taken by the BPD when he was berated by Lt. Col. Barillaro during a meeting on September 19, 2018 and when he was removed from the Groupme Text group for BPD Command Members on October 4, 2018.

82. There is a causal connection between Plaintiff's protected activities and the retaliatory actions.

83. The BPD's conduct constitutes retaliation against Plaintiff because he engaged in activities protected by Title VII.

84. The reasons stated for the BPD's actions are not the true reasons, but instead are pretext to hide the BPD's retaliatory animus.

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296

18

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, James Handley, respectfully prays that this Court grant him the following relief:

A) Grant judgment in favor of Plaintiff and declare that Defendant has violated Title VII.

B) Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future.

C) Award Plaintiff back pay with interest, back pension benefits with interest, front pay, compensatory damages, including damages for pain and suffering, reputational loss, humiliation, embarrassment, and emotional distress in an amount no less than $500,000 as a result of Defendant's violation of Title VII.

A) Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and,

B) Order such other and further relief as this Court deems just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff, James Handley, requests a trial by jury as to all Counts.

/s/ Danielle E. Marone
Jo Anna Schmidt, Esq. #10155
Danielle E. Marone, Esq. # 27835
Schmidt, Dailey & O'Neill, LLC
300 East Lombard Street, Suite 1440
Baltimore, Maryland 21202
Phone: (410) 783-1296
Fax: (410) 783-1316
dmarone@sdolaw.com
*Attorney for Plaintiff, James Handley*

Law Offices
Schmidt, Dailey & O'Neill
300 East Lombard Street
Suite 1440
Baltimore, Maryland 21202
(410) 783-1296